# In the United States Court of Federal Claims

No. 12-645C
(Filed: October 29, 2013)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PRAIRIE COUNTY, MONTANA and
GREENLEE COUNTY, ARIZONA,

              Plaintiffs,

v.

THE UNITED STATES,

              Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Payment in Lieu of Taxes Act, 31 U.S.C. §§ 6901-6907; Accrual Suspension; Contract Programs Versus Benefits Programs; RCFC 12(b)(6)

Alan I. Saltman, Washington, DC, for plaintiffs.

Sharon A. Snyder, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge.

Plaintiffs Prairie County, Montana and Greenlee County, Arizona seek to recover monies that they claim are due to them under the Payment in Lieu of Taxes Act ("PILT"), 31 U.S.C. §§ 6901-6907 (2000). Greenlee County previously was unsuccessful in seeking payments under the statute before the United States Court of Federal Claims ("Court of Federal Claims") and the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). Defendant moves to dismiss this action based on the earlier decision of the Federal Circuit. In this action, plaintiffs argue that a recent United States Supreme Court ("Supreme Court") decision changed the law such that the previous decision of the Federal Circuit no longer remains controlling precedent. Because the court rejects plaintiffs' argument, defendant's motion is granted, and accordingly plaintiffs' complaint is dismissed.

## I. BACKGROUND

### A. The Payment in Lieu of Taxes Act

In 1964, Congress established the Public Land Law Review Commission ("commission") to "conduct a comprehensive review of the policies applicable to the use, management, and disposition of the Federal lands." S. Rep. No. 94-1262, at 5 (1976). The commission returned its report four years later, recommending that the federal government no longer continue the "historic policy of disposal" of public lands but should instead keep federal ownership of the

lands then held.  Id. at 6 (citing Public Land Law Review Commission, One Third of the Nation's Land:  A Report to the President and the Congress by the Public Land Review Commission (1970) 1).  The commission also suggested that, if its recommendation of maintaining the lands owned by the federal government was followed, then it was "the obligation of the United States to make certain that the burden of that policy is spread among all the people of the United States and is not borne only by those states and governments in whose area the lands are located."  Id.

Agreeing with this recommendation, Congress enacted the PILT in 1976 "to compensate local governments for the loss of tax revenues resulting from the tax-immune status of federal lands located in their jurisdictions, and for the cost of providing services related to those lands."  Lawrence County v. Lead-Deadwood Sch. Dist. No. 40-1, 469 U.S. 256, 258 (1985).  The Supreme Court explained that the PILT was intended to address a deficiency in the way that public lands were provided with governmental services:

> Where these lands consisted of wilderness or park areas, they attracted thousands of visitors each year.  State governments might benefit from this federally inspired tourism through the collection of income or sales taxes, but these revenues would not accrue to local governments, who were often restricted to raising revenue from property taxes.  Yet it was the local governments that bore the brunt of the expenses associated with federal lands, such as law enforcement, road maintenance, and the provision of public health services.

Id. at 262-63 (citing S. Rep. No. 94-1262 at 8-9).

Pursuant to the PILT, the United States Department of the Interior ("Interior" or "agency") "shall make a payment for each fiscal year to each unit of general local government in which entitlement land is located as set forth in this chapter."  31 U.S.C. §6902(a)(1).  A "unit of general local government" includes counties and other municipalities that the Secretary of the Interior "determines to be the principal provider or providors of governmental services within the state[.]"  Id. § 6901(2)(A).  "Entitlement land" includes land owned by the United States in the National Park System and the National Forest System.  Id. § 6901(1).

To determine the amount of a payment directed by § 6902(a)(1), the agency computes payment amounts for each unit of general local government under two alternative formulas set forth in the PILT, and then distributes the higher of the two amounts calculated.  Id. § 6903(b)(1).  The agency receives funding to make the payments directed by § 6902(a)(1) through congressional appropriations.  During all times relevant to this litigation, the PILT provided:  "Necessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter.  Amounts are available only as provided in appropriation laws." [1]  Id. § 6906.  In

---

[1]  In 2008 and 2012, the PILT's funding provision was amended to read:

For each of the fiscal years 2008 through 2013 –

2006 and 2007, Congress appropriated less than the amount necessary to pay the full authorized payment amounts to every qualified unit of general local government.  Consistent with the regulations, Interior proportionally reduced the authorized payment amounts to conform to the amount of funds actually appropriated.

## B.  Plaintiffs' Allegations

Plaintiffs are political subdivisions of their respective states that qualify as units of general local government as defined by the PILT and in which entitlement land is located. Prairie County alleges that it was entitled to receive a payment of $261,987 for fiscal years 2006 and 2007 under the PILT formulas, but that it only received a $173,061 payment, a difference of $81,500.  Greenlee County alleges that it was entitled to receive a payment of $981,310 under the PILT formulas for fiscal years 2006 and 2007, but that it only received a $645,927 payment, a difference of $335,383.  Plaintiffs allege, in Count II of their complaint, that they remain entitled to the difference between what was due to them pursuant to the statutory formulas and the amount actually paid.  Plaintiffs also seek, in Count I of the complaint, to certify a class of similarly situated units of general local governments that, like the two named plaintiffs, allegedly did not receive all of the monies that were due to them under the PILT.

## C.  Procedural Background

Plaintiffs filed their complaint on September 27, 2012.  Defendant subsequently moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").

In its motion, defendant relies primarily on the decision in Greenlee County v. United States, 487 F.3d 871 (Fed. Cir. 2007), in which the Federal Circuit rejected Greenlee County's prior suit for the recovery of the PILT shortfalls.  Defendant argues that Greenlee County and the principle of issue preclusion prevent plaintiffs in this action from stating a cause of action that would allow the court to rule in plaintiffs' favor.  Oral argument is unnecessary.

## II.  DISCUSSION

## A.  RCFC 12(b)(6) Motion to Dismiss

"A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy."  Indian Harbor Ins. Co. v. United States, 704 F.3d 949, 954 (Fed. Cir.

---

(1) each county or other eligible unit of local government shall be entitled to payment under this chapter; and

(2) sums shall be made available to the Secretary of the Interior for obligation or expenditure in accordance with this chapter.

31 U.S.C. § 6906 (2006), amended by Moving Ahead for Progress in the 21st Century Act, Pub. L. No. 112-141, § 100111, 126 Stat. 405, 906 (2012); Emergency Economic Stabilization Act of 2008, Pub. L. 110-343, § 601(c)(1), 122 Stat. 3765, 3911 (2008).

2013) (citing <u>Lindsay v. United States</u>, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).  "When considering an RCFC 12(b)(6) motion, the court "must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." <u>Chapman Law Firm Co. v. Greenleaf Constr. Co.</u>, 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Harlow v Fitzgerald</u>, 457 U.S. 800, 814-19 (1982)).  "[T]he consequence of a ruling by the court . . . that plaintiff's case does not fit within the scope of the [money-mandating] source . . . is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted."  <u>Jan's Helicopter Serv. v. United States</u>, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (alteration in original); <u>see also</u> <u>RhinoCorps Co. v. United States</u>, 87 Fed. Cl. 481, 492 (2009) ("A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2006)). "Deciding whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 556).  Neither allegations "that are 'merely consistent with' a defendants liability," nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are sufficient.  <u>Id.</u>

"The court assumes all well-pled factual allegations are true and indulges in all reasonable inferences in favor of the nonmovant."  <u>Terry v. United States</u>, 103 Fed. Cl. 645, 652 (2012) (citing <u>United Pac. Ins. Co. v. United States</u>, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

## B.  <u>Greenlee County</u> Remains Controlling Precedent

Defendant relies upon <u>Greenlee County</u> to argue that plaintiff cannot state a claim upon which relief can be granted.  Because the court agrees that <u>Greenlee County</u> is controlling, a fuller discussion of the Federal Circuit's decision is warranted.

In 2004, Greenlee County filed suit alleging that it did not receive the full amount of the PILT monies to which the statutory formulas entitled it because Congress had not appropriated enough money to fully fund the program.  <u>Greenlee County</u>, 487 F.3d at 874-75.  The Court of Federal Claims granted the government's motion to dismiss, and Greenlee County appealed.  <u>Id.</u>

The Federal Circuit affirmed.  It first noted that a line of cases going back as far as 1886 established that Congress's failure to appropriate funds did not defeat a suit to enforce an obligation set by statute.  <u>Id.</u> at 877.  The Federal Circuit explained that this proposition had been expressed at least as early as 1886, when the Supreme Court held that the United States Ambassador to Haiti could sue the government to recover his full $7,500 annual salary set by

statute despite the fact that Congress had only appropriated $5,000 that year.  Id. (citing United States v. Langston, 118 U.S. 389, 390 (1886)).  In its Greenlee County decision, the Federal Circuit also found  persuasive the reasoning expressed in a United States Court of Claims' decision:  "'It has long been established that the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Government obligation created by statute.'"  Id. (quoting N.Y. Airways, Inc. v. United States, 369 F.2d 743, 748 (Ct. Cl. 1966)).  According to the Federal Circuit, in some instances a "failure [of Congress] to appropriate funds to meet statutory obligations prevents the account officers of the Government from making disbursements, but such rights [remain] enforceable in the Court of Claims."  Id. (quoting N.Y. Airways, 369 F.2d at 748) (alterations in original).

The Federal Circuit then turned its inquiry to whether the PILT fit into this template because "in some instances, the statute creating the right to compensation (or authorizing the government to contract) may restrict the government's liability or limit its contractual authority to the amount appropriated by Congress."  Id. at 878.  It concluded that the PILT was so limited, focusing on the language of § 6906 that "[a]mounts are available only as provided in appropriation laws."  Id.  The court first noted that "the language 'subject to the availability of appropriations' is commonly used to restrict the government's liability to the amounts appropriated by Congress for the purpose."  Id.   It continued:

> [W]e have stated that "[a]lthough [a plaintiff] may have expected
> to receive full funding . . . based on past experiences, the subject-
> to-availability-of-appropriations language . . . prevents [the
> plaintiff] from asserting that it was entitled to full funding as a
> matter of right."  Thus it is undisputed that if PILT used the phrase
> "subject to the availability of appropriations," Greenlee County's
> right to recover would be limited to the amount appropriated.

Id. (citation omitted).  The court concluded:  "We see little functional difference between saying that amounts are 'subject to the availability of appropriations' and saying that amounts are 'available only as provided in appropriations laws,' and we conclude that the language of § 6906 limits the government's liability under PILT to the amount appropriated by Congress."  Id.

Importantly, the Federal Circuit's decision in Greenlee County also characterized the program authorized by the PILT as a benefits program and not as establishing a contract between units of general local government and the United States.  "PILT . . . involves a benefit program not a contract, and 'there is great room' in benefits programs to find the government's liability limited to the amount appropriated."  Id. at 879 (citing Star-Glo Assocs., LP v. United States, 414 F.3d 1349, 1355 (Fed. Cir. 2005)). Therefore, the court concluded "that the government's liability for PILT payments was limited to the amounts appropriated by Congress."  Id. at 880.

Plaintiffs recognize this precedent.  Nonetheless, they argue that the Supreme Court's decision in Salazar v. Ramah Navajo Chapter, 132 S. Ct. 2181 (2012), changed the law

sufficiently such that the Federal Circuit's prior <u>Greenlee County</u> decision is no longer controlling.[2]   Plaintiffs contend:

> <u>Ramah</u> holds that once Congress has appropriated sufficient legally
> unrestricted funds to pay an obligation to the plaintiff out of an
> appropriation account from which others are to be paid, the
> government cannot back out of its promise to pay the plaintiff
> upon the exhaustion of funds in that account.  This is true even if
> the government's obligation to pay is subject to the availability of
> appropriations.

Pls.' Resp. 5 (footnotes and citations omitted).  Under <u>Ramah</u>, plaintiffs argue, the PILT must be read as an obligation to pay the full amount set by the statutory formulas, even if the amount appropriated has been exhausted.

Plaintiffs misread <u>Ramah</u>, a decision which involved breach of contract, not a benefits program.  The decision in <u>Ramah</u>, concerned a suit by Indian tribes arising under the Indian Self-Determination Act ("ISDA"), 25 U.S.C. §§ 450f-450n (1988 & Supp. II).  132 S. Ct. at 2186. Specifically, the issue before the Supreme Court in <u>Ramah</u> was whether the ISDA requires the Secretary of the Interior to contract to pay the "contract support costs" related to each self-determination contract.  <u>Id.</u>  The ISDA "directs the Secretary of the Interior, 'upon the request of any Indian tribe . . . to enter into a self-determination <u>contract</u> . . . to plan, conduct, and administer' health, education, economic, and social programs that the Secretary otherwise would had administered."  <u>Id.</u> (quoting 25 U.S.C. § 450f(a)(1)) (emphasis added).  "Congress included a model <u>contract</u> in ISDA and directed that each tribal self-determination contract 'shall . . . contain or incorporate it by reference.'"  <u>Id.</u> at 2187 (quoting 25 U.S.C. § 450*l*) (emphasis added).  The model contract provided for by the ISDA specifies that "'[s]ubject to the availability of appropriations, the Secretary shall make available to the Contractor the total amount specified in the annual funding agreement' between the Secretary and the tribe."  <u>Id.</u> (quoting 25 U.S.C. § 450*l*(c)) (emphasis added).

In <u>Ramah</u>, the Supreme Court explained that between fiscal years 1994 and 2001, "appropriations covered only between 77% and 92% of tribes' aggregate contract support costs. . . .  Lacking funds to pay each contractor in full, the Secretary paid tribes' contract support costs on a uniform, pro rata basis."  <u>Id.</u>  Several Indian tribes sued for breach of contract for the unpaid sums.  <u>Id.</u> at 2188.  Relying on its earlier decision in <u>Cherokee Nation of Oklahoma v. Leavitt</u>, 543 U.S. 631 (2005), the Supreme Court held that the tribes could recover despite the language in the contract making payment "[s]ubject to the availability of appropriations" because the "Government cannot back out of its contractual promise to pay each Tribe's full contract support

---

[2]   Plaintiffs also rely on the Supreme Court's decision in <u>Arctic Slope Native Ass'n v. Sebelius,</u> 133 S. Ct. 22 (2012), for the same purpose.  The Supreme Court's decision in <u>Arctic Slope</u> was a memorandum opinion that vacated the judgment of the Federal Circuit dismissing an Indian tribe's suit for contract support costs under the ISDA in light of <u>Ramah</u>, and remanded for further proceedings.  <u>Id.</u>  <u>Arctic Slope</u> provides no independent change in the law.

costs." <u>Ramah</u>, 132 S. Ct. at 2191.  The Supreme Court's decision in <u>Ramah</u> turned on the contractual relationship between the parties:

> Our conclusion in <u>Cherokee Nation</u> followed directly from well-established principles of Government contracting law.  When a Government contractor is one of several persons to be paid out of a larger appropriation sufficient in itself to pay the contractor, it has long been the rule that the Government is responsible to the contractor for the full amount due under the contract, even if the agency exhausts the appropriation in service of other permissible ends.  That is so "even if an agency's total lump-sum appropriation is insufficient to a pay *all* the contracts the agency has made."  In such cases, "[t]he United States are as much bound by their contracts as are individuals."

<u>Id.</u> at 2189 (citations omitted).  Indeed, it repeatedly emphasized that its decision was "[c]onsistent with longstanding principles of Government contracting law . . . ." <u>Id.</u> at 2186; <u>see also id.</u> at 2189 ("This principle safeguards both the expectations of Government contractors and the long-term fiscal interests of the United States."); <u>id.</u> at 2192 (rejecting the dissent's argument as "inconsistent with ordinary principles of Government contracting law").

Plaintiffs, in contrast, rely not on an explicit contract between themselves and defendant, but instead seek payments under the PILT, a program the Federal Circuit has determined is a benefits program.  <u>See</u> <u>Greenlee County</u>, 487 F.3d at 879.   Thus, <u>Ramah</u> is inapposite.

Plaintiffs attempt to minimize the differences between a contractually based program and a benefits program by arguing that the predictability of payment under the PILT is "critical." Pls.' Resp. 6.  The Federal Circuit did not find the "predictability of payment" a reason to depart from the distinction between a contract and a benefits program and neither will this court. Indeed, the difference between a benefits program and a contractually based program is significant, if not determinative, a point plaintiffs recognize:

> It would be equally wrong to do as defendant suggests and apply one rule where an obligation is created "subject to the availability of appropriations" by contract (particularly one to perform work done formerly by the federal government) as in <u>Ramah</u> and <u>Arctic Slope</u> and another rule where, as here, an obligation is created "subject to the availability of appropriations" by statute intended to provide local governments an adequate and predictable level of payment for services that they (not the federal government) provide with respect to federal lands located within their borders.

<u>Id.</u> at 8.  This is the precise distinction made by the Federal Circuit in <u>Greenlee County</u> and <u>Star-Glo Associates</u>.  Unquestionably, the Court of Federal Claims "is bound to follow Federal Circuit precedent unless 'the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision.'"  <u>Red River Coal Co. v. United States</u>, 105 Fed. Cl. 602,

610 (2012) (quoting <u>Strickland v. United States</u>, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005)); <u>see also</u> <u>Coltec Indus., Inc. v. United States</u>, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims").  A "trial judge, believing that [prior precedents of a circuit court] contravene a Supreme Court precedent . . . may do no more than criticize those opinions, urging en banc review."  <u>Strickland</u>, 423 F.3d at 1338 n.3.  The court sees no basis to criticize <u>Greenlee County</u> and thus follows that decision.  Additionally, the court sees no reason why making a distinction between a contractually based remedy and a benefit program would be, as plaintiffs argue, a "wrong" distinction.  Binding precedent holds the distinction between a contractually based program and qualifying for participation in a benefits program as not equivalent.  <u>Greenlee County</u>, 487 F.3d at 879 (citing <u>Star-Glo Assocs.</u>, 414 F.3d at 1355).  Consequently, the "distinction" which defines the parties' relationship to the government is not merely a distinction of form.  Rather, the distinction is determinative of the claims a party may bring against the government for money damages.

Plaintiffs additionally argue that units of general local government are not receiving "gratuitous benefits," but are providing public health, safety, and infrastructure services with respect to federal lands.  However, they do not assert that any program or contract, explicit or implicit, other than the program created by the PILT, entitles them to these funds.  At most, plaintiffs hint that these services constitute an implied-in-fact contract.  To establish the existence of an implied-in-fact contract, plaintiffs must demonstrate the same elements required to establish the existence of an express contract:  mutuality of intent, consideration, unambiguous offer and acceptance, and authority on the part of the government's representative to bind the government.  <u>Hanlin v. United States</u>, 316 F.3d 1325, 1328 (Fed. Cir. 2003).  However, plaintiffs failed to allege any of these requirements, except perhaps consideration, have been met in this case.  Consequently, because plaintiffs have not alleged the existence of an implied-in-fact contract in their complaint, the court need not decide whether the provision of services to federal lands has created one.

Plaintiffs finally argue that in <u>Bristol Bay Area Health Corp. v. United States</u>, 110 Fed. Cl. 251 (2013), the Court of Federal Claims rejected the argument that the holding of <u>Ramah</u> applies only to the United States' contractual obligations.  Plaintiffs are mistaken.  Indeed, plaintiffs' selectively quote from that decision to support their argument:  "[T]he Supreme Court in its decision in [<u>Ramah</u>] confirmed the full funding mandate, opining that the [ISDA] 'mandates that the Secretary shall pay the full amount of contract support costs incurred by tribes in performing their contracts.'"  <u>Id.</u> at 264 (quoting <u>Ramah</u>, 132 S. Ct. at 2186).  But, plaintiffs disregard the language immediately following that which they quote:

> The Supreme Court recognized the model contract and its reference to the [annual funding agreements] as a basis for the full amount of [contract support costs], and found that, "the Government's contractual promise to pay each tribal contractor the 'full amount of funds to which the contractor [was] entitled,' was therefore binding."

<u>Id.</u> (citations omitted).  Thus, it is plain that the <u>Bristol Bay</u> court acknowledged that the

contractual relationship between the tribes and the United States in <u>Ramah</u> was fundamental to the Supreme Court's decision.  The court's conclusion here – that plaintiffs participate in a benefits program and are not in privity with the United States – is not therefore inconsistent with the court's reasoning in <u>Bristol Bay</u>. Thus, plaintiffs' complaint fails to state a claim for relief.

Accordingly, the court dismisses Count II of plaintiffs' complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

### C.  Plaintiff Greenlee County Is Precluded From Relitigating the PILT Payment Deficiencies

"A fundamental precept of common-law adjudication . . . is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.'" <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979).  The doctrines of res judicata and issue preclusion, also called collateral estoppel, are "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." <u>Id.</u>  "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." <u>Id.</u>  The doctrine of issue preclusion "serves, in certain circumstances, 'to bar the revisiting of "issues" that have already been fully litigated.'" <u>Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.</u>, 719 F.3d 1367, 1371 (Fed. Cir. 2013) (quoting <u>Jet, Inc. v. Sewage Aeration Sys.</u>, 223 F.3d 1360, 1366 (Fed. Cir. 2000)).  A party asserting issue preclusion must establish four elements:  "(1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." <u>Id.</u> (citing <u>Jet, Inc.</u>, 223 F.3d at 1366).

Plaintiffs contend that issue preclusion "does not apply because . . . there has been a significant change in the law" and they seek recovery for different years than were litigated in the prior case. Pls.' Resp. 8.  To the contrary, all four factors are met in this proceeding for plaintiff Greenlee County.  The issues are the same as the issues in <u>Greenlee County</u> because both suits were filed by units of general local government seeking payment for the difference between the amounts they should have received under PILT and what they were actually paid. <u>Compare</u> <u>Greenlee County</u>, 487 F.3d at 874, <u>with</u> Compl. ¶¶ 48-56.  In addition, the issue in this case was actually litigated in and the determination was necessary to the Federal Circuit's decision in <u>Greenlee County</u>.  Indeed, the issue of whether defendant was liable for any PILT shortfall was the only issue presented and decided in <u>Greenlee County</u>.  Finally, one of the plaintiffs in this case, Greenlee County, was the same plaintiff in the <u>Greenlee County</u> case and therefore had the opportunity to litigate this issue.

Plaintiffs are correct that issue preclusion "is subject to exceptions when the circumstances dictate." <u>Bingaman v. Dep't of the Treasury</u>, 127 F.3d 1431, 1437 (Fed. Cir. 1997) (citing <u>Montana</u>, 440 U.S. at 162).  In particular, "[c]ourts have crafted an exception to the collateral estoppel principle when there has been a change in the applicable law between the time of the original decision and the subsequent litigation in which collateral estoppel is invoked." <u>Id.</u>  Plaintiffs argue that this exception applies here because <u>Ramah</u> worked a change in the

applicable law.  However, as explained above, the court concludes that there has been no change to the precedential force of <u>Greenlee County</u>, and accordingly this exception does not apply. Plaintiffs also contend that issue preclusion does not apply because the controversy now before the court concerns different payment years.  Plaintiffs argument lacks merit.  Issue preclusion applies because the factual and legal underpinnings are identical.  As the Supreme Court explained in <u>Montana v. United States</u>:  "Because the factual and legal context in which the issues of this case arise has not materially altered since [the prior decision], normal rules of preclusion should operate to relieve the parties of "redundant litigation [over] the identical question of the statute's application . . . ."  440 U.S. at 162; <u>see also</u> <u>Jet, Inc.</u>,  223 F.3d at 1366 ("[T]he 'identity of issues' analysis requires inquiry into the actual facts found and presented in the earlier litigation.").

Because all four factors are met with respect to plaintiff Greenlee County and because the court has found that <u>Ramah</u> has not worked a change in the law such that this action falls within an exception to the doctrine of issue preclusion, plaintiff Greenlee County must be dismissed from this case. Moreover, the court need not consider whether plaintiff Prairie County and the rest of the purported class of units of general local government are barred by issue preclusion stemming from the <u>Greenlee County</u> decision.  Such an analysis would focus on whether the non-parties to the prior decision were nonetheless privy to or represented in the prior proceeding. <u>See generally</u> <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892-895 (2008) (discussing when a non-party to a prior judgment may still be bound by res judicata or issue preclusion).  The parties have provided no background or argument speaking to this point and thus the court need not decide if issue preclusion applies to any party other than Greenlee County.  However, even if Prairie County and the members of the purported class were not privy to or represented in <u>Greenlee County</u>, their claims must still be dismissed for failure to state a claim based on the controlling precedent of that decision.

**D.  Plaintiffs' Request for Class Action Certification Is Dismissed as Moot**

In <u>Greenlee County</u>, the Federal Circuit affirmed the decision of the Court of Federal Claims finding the issue of class certification moot because the cause of action under PILT had been dismissed.  487 F.3d at 880-81.  The Federal Circuit noted that it had "repeatedly found on appeal that issues related to class certification were moot in light of [its] resolution against the plaintiff of a motion to dismiss or for summary judgment" and saw "no reason to apply a different rule when it is the Court of Federal Claims that finds the issue moot." <u>Id.</u> at 880.

Count I of the complaint seeks only to certify a class of similarly situated units of general local government.  Having dismissed Count II of the complaint, the only claim upon which relief could be granted for any individual plaintiff, the court also dismisses Count I, plaintiffs' request to certify a class, as moot.

### III.  CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's motion to dismiss and **DISMISSES** plaintiffs' complaint for failure to state a claim upon which relief can be granted. The clerk is directed to enter judgment accordingly.  No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge